**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

---

**AUTUMN CHASE HOMEOWNERS**
**ASSOCIATION,**

       **Plaintiff,**

**v.**                                        **Civil Action No. _____**

**QBE INSURANCE CORPORATION,**         **JURY DEMANDED**

       **Defendant.**

---

## COMPLAINT

---

      COMES NOW Autumn Chase Homeowners Association, by and through counsel, and for its claims against QBE Insurance Corporation would respectfully state and show as follows:

### PARTIES AND JURISDICTION

      1.    Autumn Chase Homeowners Association (hereafter "Autumn Chase") is a non-profit corporation duly formed under the business organization laws of the State of Tennessee. Autumn Chase is an owners association that is governed by a Board of Directors pursuant to Tennessee law. The residential units and associated property is located at 301-325 Autumn Chase Drive, Nashville, Davidson County, Tennessee 37214 (the "Insured Premises").

      2.    QBE Insurance Corporation ("QBE") is a Pennsylvania corporation engaged in the business of insurance in the State of Tennessee.

      3.    This Complaint originates as the result of a storm that severely damaged the improvements and other property located at the Insured Premises, and QBE's unlawful actions as follows: (1) QBE's partial denial of Autumn Chase's claim for insurance proceeds; and (2)

1

Autumn Chase's refusal to submit to the appraisal process as set forth in the insurance policy at issue.

**FACTS**

4.      At all times material hereto, Autumn Chase was an insured in an insurance contract whereby QBE agreed to insure the Insured Premises against property damage, being Policy No. CAU309291-1 (the "Policy").  The Policy is incorporated herein by reference as if set forth verbatim.  As relevant hereto, the term of the policy was October 19, 2009 through October 19, 2012.

5.      At all times relevant hereto, the Insured Premises consisted of a clubhouse, eight one- and two-story frame condominium buildings containing twenty-five residential units, and surrounding areas.

6.      The Policy provided insurance coverage for loss or damage to the Insured Premises.  The Policy is an "all risk" policy, which means that it provides insurance coverage for all direct physical loss or damage to covered property unless the loss is specifically excluded in the Policy.

7.      The Policy's coverage for the buildings and structures on the Insured Premises was on a "guaranteed replacement cost" valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

8.      Pursuant to the Policy, Autumn Chase paid a premium to QBE in exchange for insurance coverage.  Autumn Chase paid the required premiums at all times relevant to this Complaint.

9.      On or around March 2, 2012, a severe wind and hail storm struck the Insured Premises, causing substantial wind and hail damage to buildings and structures located on the

Insured Premises (the "Loss"). As a result of the Loss, the buildings and structures located on the Insured Premises suffered immediate and direct physical loss, including but not limited to damage to metal roof vents, window screens, metal fascia, ridge caps, roof shingles, etc.

10.    The Policy was in effect at the time of the Loss, and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

11.    The Loss was promptly reported to QBE.

12.    Autumn Chase fulfilled all of the duties after the Loss that were imposed upon it by the Policy.

13.    QBE, by and through its managing general agent, Community Association Underwriters of America, Inc. ("CAU"), admitted and represented to Autumn Chase that the Loss was a compensable claim, and a portion of Autumn Chase's claim as a result of the Loss has in fact been paid.

14.    A dispute arose between Autumn Chase and QBE as to the amount of the Loss.

15.    On November 20, 2012, Autumn Chase demanded appraisal pursuant to the appraisal provision of the Policy. Specifically, the Policy provides:

**N.    Appraisal**

1.    If you and we disagree on the amount of loss or value of property, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. In this event, either party will do the following:
   a.  Select its own appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal.
      (1) The appraisers will state separately and independently the amount of the loss or damage.
      (2) If the two appraisers fail to agree they will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.
      (3) An agreement by any two will be binding as to the amount of the loss.

3

    b. Pay the costs of its own appraiser.

    c. Pay its share of any other costs of the appraisal as follows:

       (1) If the amount agreed upon in N.1.a.(3) above is higher than either party's appraisal in N.1.a.(1), above, the party submitting the lower appraisal will pay all such costs.

       (2) If the amount agreed upon in N.1.a.(3) is lower than either party's appraisal in N.1.a.(1), above, the party submitting the higher appraisal will pay all such costs.

       (3) Otherwise, each party's share of such other costs is determined using the following steps:

       **Step 1:**
Determine, by subtraction, the difference between that party's appraisal in N.1.a.(1) above and the amount agreed upon in N.1.a.(3) above.

       **Step 2:**
Divide the result of Step 1 by the difference between each party's appraisal in N.1.a.(1) above.

       **Step 3:**
Multiply the result of Step 2 by the total of such other costs to determine that party's share.

2. If we submit to an appraisal, we will still retain our right to deny the claim.

16.     QBE has refused to submit the claim to appraisal to determine the amount of the loss. In support of its refusal to submit to appraisal, QBE alleges that the claim involves coverage issues inappropriate for the appraisal process. Despite Autumn Chase's requests, QBE has been unable or unwilling to identify the coverage issues which it alleges are in dispute. In reality, this claim involves no coverage issues, but rather simply requires a determination of the amount of the loss. The only disputed issue is the amount owed by QBE to Autumn Chase for wind and hail damage to buildings and structures on the Insured Premises during the term of the Policy. There is no reasonable coverage dispute, and this claim is appropriate for the appraisal process as set forth in the Policy.

17.     Despite the prior agreement by QBE that the Loss is compensable under the Policy and the fact that Autumn Chase has fulfilled all duties imposed upon it by QBE and is at

4

no fault in this matter, QBE has refused to timely and fully pay Autumn Chase's claim for insurance proceeds.

18.     QBE's refusal to promptly and fully pay Autumn Chase the amounts owed as a result of the Loss is without justification.  QBE's refusal to submit the claim to appraisal is without justification.

19.     QBE's refusal to pay the money and benefits due and owing Autumn Chase under the Policy and refusal to submit the claim to appraisal has caused Autumn Chase to seek legal counsel and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which Autumn Chase is entitled.

## CAUSES OF ACTION

### Count I – Breach of Contract

20.     The allegations contained in paragraphs 1-19 of this Complaint are incorporated herein by reference as if set forth verbatim.

21.     The Policy issued by QBE to Autumn Chase is a binding contract, and is supported by valid consideration.

22.     QBE is in total, material breach of the Policy, and QBE is liable to Autumn Chase in the maximum amount allowed by the Policy for the Loss, less payments previously made. Specifically, QBE breached its contract with Autumn Chase by its failure and refusal to fully and promptly pay the amounts owed to Autumn Chase as a result of the Loss as required by the terms of the Policy.  QBE also breached its contract with Autumn Chase by refusing to submit the claim to appraisal for valuation of the amount of the loss.

23. As a result of QBE's breach of contract, Autumn Chase has sustained substantial compensable losses for the amounts claimed under the Policy, as well as money damages for economic losses, and other numerous and assorted incidental and consequential damages.

24. QBE's actions and breaches have further caused Autumn Chase great and substantial harm due to the fact that it has been unable to replace much of the damage caused by the Loss as a result of the financial hardship unduly placed upon it as a direct and proximate result of QBE's failure to pay Autumn Chase the proper amounts as required by the Policy and QBE's refusal to submit the valuation dispute to appraisal. QBE is liable to Autumn Chase for its losses.

## Count II – Common Law Bad Faith

25. The allegations contained in paragraphs 1-24 of this Complaint are incorporated by reference as if set forth verbatim herein.

26. Autumn Chase alleges that QBE is liable to it as a result of QBE's bad faith in the handling of Autumn Chase's insurance claim and QBE's refusal to submit the claim to appraisal.

27. QBE issued a policy of insurance to Autumn Chase, and Autumn Chase made a lawful, reasonable claim under that policy.

28. QBE intentionally refused to pay Autumn Chase's full claim, and intentionally refused to submit the claim to appraisal.

29. QBE had no reasonably legitimate or arguable reason for its refusal to pay the full claim or its refusal to submit the claim to appraisal.

30. QBE had actual knowledge of the absence of a reasonably legitimate, debatable or arguable reason for the refusal to pay or to submit the claim to appraisal.

31. QBE intentionally failed to determine whether it had a reasonably legitimate or

6

arguable reason for refusing to pay Autumn Chase's claim or to submit the claim to appraisal.

32.     QBE has a duty to act in good faith when handling the claims of its insureds, including the claim filed by Autumn Chase as a result of the Loss.  The bad faith refusal to settle an insurance claim and to submit a valuation dispute to appraisal is a breach of that duty and imposes tort liability.

33.     QBE breached its duty to handle Autumn Chase's claim in good faith by refusing to pay the full amount of the valid claim and refusing to submit the claim to appraisal.  QBE's unlawful actions were not predicated upon circumstances that furnished reasonable justification therefore.

34.     The bad faith of QBE is evidenced by the fact that, at all times hereto, QBE knew, or reasonably should have known, that Autumn Chase was justifiably relying on the rights and benefits due it under the terms of the Policy and as otherwise promised and represented by QBE, as well as the actions of QBE as set forth in the paragraphs above and below.  Nevertheless, acting with conscious disregard for Autumn Chase's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Autumn Chase, QBE consciously ignored Autumn Chase's valid claim and withheld monies and benefits rightfully due Autumn Chase and has refused to submit the claim to appraisal.

35.     QBE's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following:

> a.  QBE's intentional failure to fully inform Autumn Chase of its rights and obligations under the Policy;

b. QBE's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Autumn Chase's claim when liability was reasonably clear;

c. QBE's intentional refusal to pay Autumn Chase's claim and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

d. QBE's intentional refusal to fully investigate Autumn Chase's claim and to obtain all available information before alleging that it has no further obligations to Autumn Chase;

e. QBE's engaging in acts and practices toward Autumn Chase that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Autumn Chase;

f. QBE's intentional failure to promptly provide Autumn Chase with a reasonable and accurate explanation for the denial of Autumn Chase's appraisal demand;

g. QBE's intentional failure to properly adjust Autumn Chase's claim, to pay Autumn Chase fully for its losses, and to submit a dispute concerning valuation to appraisal after proper written demand;

h. QBE's intentional failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis;

i. QBE's intentional refusal to submit the claim to appraisal after Autumn Chase demanded appraisal pursuant to the appraisal provision of the policy on December 7, 2011 when there is only a dispute as to value and no coverage questions are implicated; and

8

j.   QBE's intentional use of biased "experts" to avoid its contractual obligations to Autumn Chase.

36.   QBE's conduct was intentional, fraudulent, malicious, oppressive, grossly negligent and/or reckless, therefore justifying an award of punitive damages.

WHEREFORE, as a result of the foregoing, Autumn Chase would respectfully request that this Honorable Court award a judgment against QBE as follows:

A.   For an Order requiring that QBE honor the Policy and submit the disagreement concerning the amount of the loss to appraisal as properly demanded by Autumn Chase;

B.   For compensatory damages not to exceed $400,000.00;

C.   For punitive damages not to exceed nine times the compensatory damages, or $3,600,000.00;

D.   For all costs incurred by Autumn Chase as a result of this action;

E.   For pre- and post-judgment interest; and

F.   For such other further and general relief as this Court deems just and equitable.

### IV. JURY DEMAND

Autumn Chase demands a jury.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

*/s/ J. Brandon McWherter*
J. BRANDON MCWHERTER #21600
CLINTON H. SCOTT #23008
*Attorney for Plaintiff*
101 N. Highland
Jackson, Tennessee 38301
Telephone: (731) 664-1340
bmcwherter@gilbertfirm.com

9